Cones, Adm'r, *v.* Cincinnati, Indianapolis, St. Louis and Chicago R'y Co.

No. 13,208.

CONES, ADMINISTRATOR, *v.* THE CINCINNATI, INDIANAP-
OLIS, ST. LOUIS AND CHICAGO RAILWAY COMPANY.

NEGLIGENCE.—*Injury at Railroad Crossing.—Contributory Negligence of Trav-
eller.*—A traveller upon a highway who is injured at a railroad crossing
can not recover if, by the proper exercise of the sense of sight or of
hearing, he could have avoided the injury.

From the Boone Circuit Court.

*J. Claybaugh* and *P. H. Dutch,* for appellant.

*O. B. Hord, A. W. Hendricks, A. Baker, E. Daniels, C. S.
Wesner* and *R. W. Harrison,* for appellee.

MITCHELL, C. J.—Complaint in two paragraphs by George
W. Cones, administrator of the estate of Tilghman A. H.
Cones, against the above named railway company, charging
that the latter had wrongfully caused the death of the plain-
tiff's intestate by driving one of its engines and trains at an
excessive rate of speed over a public highway crossing, with-
out giving the signals required by law, thereby causing the
engine and train so driven to collide with the buggy in which
the intestate was riding.

At the trial the jury returned a general verdict in favor
of the plaintiff, assessing his damages at $2,000. With their
general verdict the jury also returned answers to sixty special
interrogatories, and upon the answers so returned, the court
rendered judgment in favor of the defendant below, not-
withstanding the general verdict.

The propriety of this ruling is the only question involved
in this appeal. Without setting out all the interrogatories
and answers in detail, we give the following summary of
facts which they establish: The intestate was a physician
practicing his profession in Thorntown and vicinity, being a
resident of the town. The collision which resulted in his
death occurred at about five minutes past five o'clock on the

evening of November 23d, 1882. The train with which he came in collision was a regular passenger train, running substantially on its schedule time, at a rate of about twenty-five miles an hour, which the jury find was a proper rate of speed under the circumstances. It was dark at the time, and snowing, and the wind was blowing. The railroad track in the direction from which the train approached was substantially straight, as was the highway over which the intestate was passing. The head-light on the engine was burning brightly, and there was no obstruction to prevent a traveller approaching the track along the highway from seeing the coming engine. The jury answer ambiguously concerning the sounding of the whistle, but they find that the bell upon the engine was not rung continuously for more than eighty rods before it reached the point of collision.

From the thirty-third to the thirty-ninth inclusive, the interrogatories and answers are as follows:

"33. Could Dr. T. A. H. Cones, as he approached the crossing of defendant's railroad, where he lost his life, by the vigilant use of his sense of sight, have avoided the injury complained of? Yes.

"34. Could Dr. T. A. H. Cones, as he approached the crossing of defendant's railroad, where he lost his life, by a vigilant use of his sense of hearing, have avoided the injury complained of? No.

"35. Could Dr. T. A. H. Cones, as he approached the crossing of defendant's railroad, where he lost his life, by a vigilant use of his sense of hearing, have heard the noise made by the running of the train, and thereby have avoided the injury complained of? Yes.

"36. Was not Dr. T. A. H. Cones familiar with the railroad crossing, where he lost his life, and the surroundings of that crossing at the time of the accident, and for five months immediately prior thereto, by reason of having crossed at the same place several times a week? Yes.

" 37.  How was Dr. T. A. H. Cones driving, as respects the speed of his team, as he approached the crossing where he lost his life ?  Fast trot.

" 38.  How was Dr. T. A. H. Cones driving, as respects the speed of his team, when he went upon the railroad track where he lost his life ?  Fast trot.

" 39.  Did Dr. T. A. H. Cones, as he approached the crossing, for four hundred feet immediately east of it, check the speed of his team at any point before the collision ?  If he did, where was he ; how far from the crossing ?  No."

The rule is so well established as to have become general, that one about to go upon or across a railroad track must first look and listen for approaching trains, and if, without taking these precautions, he makes the attempt to cross and is injured by a passing train, which might have been seen if he had looked, or heard if he had listened, the person so injured will be deemed guilty of negligence *per se.*  If the view is unobstructed, as is found to have been the fact in the present case, the person approaching the track may have no occasion to listen, but the rules of law as well as the dictates of common prudence require that he should look before entering upon the track.

If the view is obstructed, looking may be of no avail. Then it becomes his duty to make a vigilant use of the sense of hearing, and he must listen.  In either case, the law will assume that he actually saw what he could have seen, if he had looked, and heard what he could have heard, if he had listened.

The rules governing in cases of this class have been so often and so recently stated and reiterated that no useful purpose can be subserved by enlarging upon them.  *Toledo, etc., R. W. Co.* v. *Brannagan,* 75 Ind. 490 ;  *Pittsburgh, etc., R. W. Co.* v. *Conn,* 104 Ind. 64 ;  *Cincinnati, etc., R. R. Co.* v. *Butler,* 103 Ind. 31 ;  *Indiana, etc., R. W. Co.* v. *Greene,* 106 Ind. 279, and cases cited ;  *Cincinnati, etc., R. W. Co.* v. *Long,*

Cones, Adm'r, v. Cincinnati, Indianapolis, St. Louis and Chicago R'y Co.

112 Ind. 166 ; *Indiana, etc., R. W. Co.* v. *Hammock,* 113 Ind. 1 (14 N. E. Rep. 737, note); *Chase* v. *Maine Central R. R. Co.,* 78 Maine, 346 (19 Am. and Eng. Railroad Cases, 356); *Schofield* v. *Chicago, etc., R. W. Co.,* 114 U. S. 615.

The facts found in the present case show that the deceased approached the crossing at a dangerously rapid rate of speed, and that he drove upon the track without reducing the pace of his team, and that, too, when he could have seen and heard the train approaching, in time to have avoided injury, if he had looked or listened.

The conclusion is irresistible that the deceased must have seen and heard the train, and that he was driving at a rate of speed which he supposed would carry him over the crossing in advance of the train. Persons who deliberately or incautiously take the desperate chance of such a race are without remedy in case they miscalculate and lose.

In any point of view from which the case may be considered, the special findings are in irreconcilable conflict with the general verdict.

There was no error in sustaining the defendant's motion for judgment in its favor on the answers to interrogatories, notwithstanding the general verdict.

Judgment affirmed, with costs.

Filed April 14, 1888.