The Louisville and Nashville Railroad Company *v.* Cronbach, Admr.

No. 1,498.

## The Louisville and Nashville Railroad Company *v.* Cronbach, Administrator.

Railroad.—*Person Entering Upon Track in Front of Engine Ready to Move at Any Moment.—Failure to Look and Listen.—Contributory Negligence.*—Where one enters upon a railroad track in front of an engine which is liable to move at any moment, and walks along the track in front of it for a distance of three hundred feet or more, and neither looks nor listens to see whether the engine is moving, and is struck by the engine when he might have avoided the accident by the exercise of ordinary care, such conduct amounts to contributory negligence.

Same.—*Walking in Front of Moving Train.—Presumption that Such Person Will Leave Track in Time to Avoid Injury.—Contributory Negligence.—Recovery.*—When a person is walking on a railroad track in front of an approaching train the servants in charge of the train have the right to presume, up to the last moment, that he will step off the track in time to avoid injury, where it is possible to do so. And even if such person has a right to walk on the track, the right of the company in running its trains takes precedence over his, and he must, by due exercise of his senses, take proper precaution against injury, or failure to do so will amount to contributory negligence and defeat a recovery, regardless of defendant's negligence, unless the injury was willfully inflicted.

Interrogatories to Jury.—*When Will Override General Verdict.*—Answers to interrogatories override the general verdict only where both can not stand, and this antagonism must be apparent on the face of the record, beyond the possibility of being removed by any evidence legitimately admissible under the issues, before the court can direct judgment in favor of the party against whom a general verdict has been rendered.

From the Gibson Circuit Court.

*J. E. Iglehart, E. Taylor, L. C. Embree, J. H. Miller* and *F. P. Leonard,* for appellant.

*C. A. Buskirk, J. W. Brady* and *G. V. Menzies,* for appellee.

Davis, J.—This action was instituted by appellee to

recover damages on account of the death of the decedent Henry C. Cartmell.

The complaint was in two paragraphs. The verdict was limited to the first paragraph.

Omitting the formal parts of the pleadings, about which there is no dispute, it is alleged that on the 15th day of March, 1892, defendant operated a railroad, which passed through and within the corporate limits of the city of Mt. Vernon, with its main track laid over Eleventh street, and over what would be the continuation of that street to the western corporation line of the city, where it crossed a public highway; that from where the main track crossed the main street of the city, thence to the public highway on the west, for more than twenty years prior to the 15th of March, 1892, and on that day, the public, with the knowledge and consent of the defendant, had and were using that part of the main track above described as a thoroughfare in passing on foot to and from Main street, in said city, to the highway on the west; that on said day the decedent lived near where the main track intersected the highway on the west, and in the forenoon of that day started on foot from defendant's station house to his home, passing, as he left the station house, on to the main track leading to the highway and to his home, which was and had been for the time, and in manner stated, in general use by the public as a passway; that as decedent stepped on to the main track one of defendant's engines was standing still on the main track, headed west, with three cars attached; that defendant's servants were at that time engaged in setting off cars on a side track of the defendant by means of a switch located a short distance west of the engine, and that in the proper management of said engine there was no occasion for the engine to go on the main track west of the switch, and where the decedent was then walking;

that a person such as an engineer or fireman then standing at an elevated place on the engine, could look west on the main track, which was straight for a quarter of a mile, with nothing to interfere with the view or prevent the decedent, who was then walking west with his back to the engine, from being seen; that the servants of the defendant then in charge of the engine saw the decedent, who was in plain view, and knew decedent was walking westwardly on the main track towards the public highway; that with decedent in plain view, and knowing that he was not aware that said engine was about to be started, and when he was some yards west of the switch, those in charge of the engine carelessly, negligently and suddenly, without giving any warning or making any signal, caused the engine to be started ahead at the rate of twenty miles per hour towards the decedent; that after the engine and the attached cars were put in motion, and before the switch was reached, the rear car was cut off, and the engine and remaining cars were moved forward at an increased speed towards the decedent, without sounding the whistle, ringing the bell or making any warning signal; the engine and cars, from some cause, making no noise or sound, the decedent at this time not hearing any noise from the moving engine or cars, or knowing that the same were moving rapidly toward him, ignorant of the approach of the same, and being in plain view of those operating the cars, the employes carelessly and negligently ran the engine upon him, etc.; that at that time decedent was without fault, etc.

It is not alleged that appellant's employes in charge of the engine saw the decedent, or that they in fact became aware of the danger to which he was exposed after the engine was started. There is an allegation, in substance, that the employes of appellant, in charge of the train, suddenly started the engine at a high rate of speed in

violation of a city ordinance, for the purpose of making a running switch, knowing that the intestate was ignorant that the engine was so put in motion, and that he was in plain view of those operating the cars, but there is no averment that when the engine and cars were negligently moved towards and against him they saw him or knew that he was not aware that the engine was coming behind him.

Among the interrogatories and answers thereto are the following:

27. Was not the defendant's engine running westward on defendant's main track at the time it collided with Cartmell?  Ans. Yes.

28. Was not Cartmell walking westward between the rails of defendant's main track at the time he was struck by defendant's engine?  Ans. Yes.

31. Was there anything in the way to prevent Cartmell from seeing the engine at the time he went upon the main track, or any time thereafter before he was struck by the engine, if he had looked in the direction from whence it came?  Ans. No.

32. If you answer the next preceding interrogatory in the affirmative, state what there was to obstruct or prevent Cartmell from seeing the engine.  Ans. Nothing.

33. Had not Cartmell walked past the engine by which he was injured while it was on the defendant's main track headed west immediately before he went upon the track in front of it?  Ans. Yes.

34. Did not Cartmell know that the engine that ran over him was on the track, headed west and under steam, when he went upon the track in front of it?  Ans. Yes.

35. Was Cartmell in any wise deficient in his senses of sight or hearing on the day he was injured?  Ans. No.

38. Was not Cartmell about forty-nine (49) years old

and reasonably active at the time of the injury? Ans. Yes.

39. Was there anything to prevent Cartmell from stepping off the track and avoiding collision with the engine if he had looked for its approach? Ans. No.

40. Was there anything to prevent Cartmell from stepping off the track and avoiding collision with the engine if he had listened for its approach?. Ans. No.

41. If there was anything to prevent Cartmell from stepping off the track state what it was. Ans. Having no knowledge of the engine's approach.

56. Was there not on the 15th day of March, 1892, a space between the defendant's main track and its side track suitable for a footway, extending from the depot at Mt. Vernon, Indiana, westward to the lower New Harmony road? Ans. Yes.

In addition to these, other answers of the jury set forth that the killing of appellee's intestate occurred on the appellant's main track, near a tool house which stood about 300 feet west of the depot at Mt. Vernon, and between the depot and the lower New Harmony road which crossed the main track some 1,200 feet west of the depot.

The verdict was upon the paragraph of the complaint charging negligence, and, in their answers to interrogatories, the jury expressly returned that the injury was not purposely inflicted.

The facts of the case, as shown by the evidence, construed most strongly in favor of appellee, are, substantially, that on and for some years before the 15th day of March, 1892, the decedent, Henry C. Cartmell, lived at Mt. Vernon, Indiana, in the immediate neighborhood of the appellant's tracks and switching yards, west of its depot. He had been for a time a section hand on appellant's road, and was well acquainted with the tracks at the place of his injury and the use of them by the appellant.

About seven o'clock on the morning of the day in question one of appellant's freight trains traveling west was at its depot at Mt. Vernon engaged in switching and moving cars.

Cartmell had been at a saloon east of the depot and was on his way from the saloon westward toward his home. As he proceeded from the saloon to the place where he was killed, he walked the entire length of the depot platform, stepped upon the ground at the west end of the platform, proceeded a short distance westward between the main track and a switch just south of it, turned and went upon the main track, and continued to walk westward between the rails, for a distance of about three hundred feet, on and along appellant's right of way,—not upon any street highway or public crossing. The railroad was built over ground that had been used as a passway, and along the line of the track were houses, cooper shops, brick yards, etc. Near the track was a grove used by the public for picnics, barbecues, political meetings, campmeetings, etc., and also in that vicinity were the county infirmary and a racing stable. The appellant had run excursion trains for public gatherings at this grove, landing its passengers at its station, knowing that the excursionists would walk west on its track to the grove. For twenty years the public had passed to and fro along this track. On this occasion the freight train, with the engine attached to at least part of its cars, was standing on the main track beside the platform, headed west and likely to move in that direction at any moment. The front of the engine was a few feet west of the west end of the platform, and, in walking, the intestate was compelled to pass within six or eight feet of it. He was 49 years old, reasonably active and not defective in sight or hearing.

Under these conditions the decedent entered upon the

track, immediately in front of the engine, and deliberately walked thereon until the engine started forward, overtook and collided with him. He could have walked alongside the track in safety. He did not look to discover the approach of the engine; there is no evidence that he listened. He made no effort to leave the track. The ground was covered with snow, which may have to some extent deadened the sound made by the wheels of the engine on the track, but there was nothing to prevent his hearing its other noises if he had listened, or to obstruct his view of it if he had looked around. These are essential facts so far as they relate to the conduct of the appellee's intestate.

The errors assigned are:

1. That the complaint does not state facts sufficient to constitute a cause of action.

2. That the court erred in overruling the motion for judgment on the special findings of the jury in their answers to interrogatories notwithstanding the general verdict.

3. That the court erred in overruling the motion for a new trial.

The first assignment calls in question the sufficiency of the complaint as an entirety, but it has not been discussed in a manner requiring us to decide it. In the second paragraph it is charged that the killing of the intestate was done purposely.

In this connection, however, we will briefly refer to some of the principles applicable to cases of this character.

In *Faris* v. *Hoberg*, 134 Ind. 269, Judge HACKNEY, speaking for the Supreme Court, says:

"In every case involving actionable negligence, there are necessarily three elements essential to its existence: 1. The existence of a duty on the part of the defendant

to protect the plaintiff from the injury of which he complains. 2. A failure by the defendant to perform that duty; and, 3. An injury to the plaintiff from such failure of the defendant. When these elements are brought together, they unitedly constitute actionable negligence. The absence of any one of these elements renders a complaint bad or the evidence insufficient." *Thiele* v. *McManus*, 3 Ind. App. 132; *Evansville, etc., R. R. Co.* v. *Griffin*, 100 Ind. 221.

In *Louisville, etc., R. W. Co.* v. *Bryan*, 107 Ind. 51, the late Judge MITCHELL says: "To constitute a wilful injury the act which produced it must have been intentional or must have been done under such circumstances as evinced a reckless disregard for the safety of others and a willingness to inflict the injury complained of."

We quote again from an opinion written by Judge HACKNEY:

"Wilfulness does not consist in negligence. On the contrary, as illustrated by the cases of Bryan and of McManus, heretofore cited, the two terms are incompatible. Negligence arises from inattention, thoughtlessness or heedlessness, while wilfulness can not exist without purpose or design. No purpose or design can be said to exist where the injurious act results from negligence, and negligence can not be of such a degree as to become wilfulness. Indeed, this court has so often denied the claim which attempts to distinguish between degrees of negligence, that authority or further statement in denial should not be deemed necessary." *Parker, Admr.*, v. *Pennsylvania Co.*, 134 Ind. 673.

In a recent case Judge REINHARD says:

"Actionable negligence consists in the failure of the defendant to discharge some duty or obligation resting upon the defendant towards the plaintiff from which in-

jury has resulted.   *   *   *   If, for example, the appellee was a mere trespasser upon the appellant's property, the latter owed him no such duty as would require him to provide safeguards around the open elevator shaft.   If he was a licensee, that is, if he was permitted to come upon the premises by mere sufferance of the proprietor, the latter still owed him no duty which would render him liable for leaving the opening unprotected.   It is only where the injured party came upon the premises of the owner or proprietor by invitation, express or implied, that the latter assumes the obligation of providing safe and suitable means of ingress and egress, and of moving about the premises.''   *South Bend Iron Works* v. *Larger*, 11 Ind. App. 367.   See, also, *Cleveland, etc.*, *R. W. Co.* v. *Adair*, 12 Ind. App. 569.

Assuming, therefore, without deciding, that the first paragraph is sufficient on the theory of negligence and that the second is sufficient on the theory of wilfulness, we will briefly consider the questions discussed.   It should be remembered that the verdict of the jury was in favor of appellant on the first paragraph of the complaint.

The jury, by their general verdict, have presumably found every material allegation of the first paragraph of the complaint to have been proven; and that presumption conclusively prevails in this court unless the contrary is clearly shown by the answers to the interrogatories.   The special findings override the general verdict only where both can not stand, and this antagonism must be apparent upon the face of the record beyond the possibility of being removed by any evidence legitimately admissible under the issues before the court can be successfully called upon to direct judgment in favor of the party against whom a general verdict has been rendered. *Indianapolis Union R. W. Co.* v. *Ott*, 11 Ind. App. 564; *Cincinnati, etc., R. W. Co.* v. *Smock*, 133 Ind. 411; *Match-*

*ett* v. *Cincinnati, etc., R. W. Co.*, 132 Ind. 334; *Pennsylvania Co.* v. *Smith*, 98 Ind. 42; *Cox* v. *Ratcliffe*, 105 Ind. 374; *Louisville, etc., R. W. Co.* v. *Creek*, 130 Ind. 139; *Indianapolis, etc., R. R. Co.* v. *Lewis,* 119 Ind. 218.

Assuming, for the purposes of this decision, that appellant is shown to have been guilty of actionable negligence, and waiving the question as to whether appellant was entitled to judgment on the answers of the jury to the interrogatories, we are of the opinion that the evidence fails to show that said Cartmell was free from fault. *Pennsylvania Co.* v. *Meyers, Admx.*, 136 Ind. 242, and authorities there cited; *Chicago, etc., R. W. Co.* v. *Hedges, Admx.*, 118 Ind. 5; *Cones, Admr.,* v. *Cincinnati, etc., R. W. Co.* 114 Ind. 328; *Smith* v. *Wabash, R. R. Co.* 141 Ind. 92; *Terre Haute, etc., R. R. Co.,* v. *Graham,* 95 Ind. 286.

This case, in all essential respects, is very much like the case of *Pennsylvania Co.* v. *Meyers, Admx., supra.*

It is ordinarily true that one whose negligence has contributed to an accident from which he has sustained an injury will not be debarred the right to recover if the defendant, after having discovered his peril, having also reasonable ground to believe him unconscious of danger or unable to avoid it, might himself, by the exercise of ordinary care, have prevented the mischief which follows. *Evans* v. *Adams Ex. Co.*, 122 Ind. 362.

Assuming there is evidence in the record tending to prove that appellant's servants knew of the presence of Cartmell on the track in front of the moving train in time to have stopped it before the collision, they had the right to presume that he would step off the track in time to avoid injury up to the last moment before he was struck. *Pennsylvania Co.* v. *Meyers, Admx., supra; Louisville, etc., R. R. Co.* v. *Lohges*, 6 Ind. App. 288.

In the light of this presumption there is no evidence, either direct or circumstantial, in our opinion, author-

izing the inference that they had reasonable ground to believe, before the engine struck him, that Cartmell was unconscious of his danger, or that he was unable to avoid it.    On the contrary, they may well have presumed that Cartmell knew, before the engine reached him, that it was moving towards him, and that he would step from the track before he was overtaken.    *Pittsburgh, etc., R. W. Co.* v. *Judd*, 10 Ind. App. 213.

It is true, appellant's servants had the opportunity to see Cartmell on the track in front of the engine and, in the exercise of ordinary care, they ought to have given a signal of warning to him, but he had an opportunity to see or hear the engine and he ought to have looked and listened to ascertain whether the track was clear. The danger was open and obvious to him if he had given any attention to his surroundings.    *Levey* v. *Bigelow*, 6 Ind. App. 677.

It appears from the evidence and is found as a fact by the jury that after passing the engine, which was standing on the track ready to move at any moment, he walked on and along the track in front of it for a distance of three hundred feet or more, and neither looked nor listened to see whether it was moving.    *Pittsburgh, etc., R. W. Co.* v. *Bennett*, 9 Ind. App. 92.

The facts and circumstances of this case do not bring Cartmell within the exception recognized in *Grand Rapids, etc., R. R. Co.* v. *Cox*, 8 Ind. App. 29.

If the verdict had been based on the issue tendered by the second paragraph of the complaint the question as to whether he was guilty of contributory negligence would not be material.    *Barr, Admr.*, v. *Chicago, etc., R. R. Co.*, 10 Ind. App. 433.

In relation to the use of the track by the public for twenty years, see *Cargar* v. *Fee*, 140 Ind. 572, and *Davis* v. *Cleveland, etc., R. W. Co.*, 140 Ind. 468.

˜ As to licensees by sufferance or permission, see, also, *Indiana, etc., R. W. Co.* v. *Barnhart,* 115 Ind. 399, and *Jeffersonville, etc., R. R. Co.* v. *Goldsmith,* 47 Ind. 43.

The judgment is reversed, with instructions to sustain appellant's motion for a new trial.

