No. 1,465.

SHIRK, BY NEXT FRIEND, *v.* WABASH RAILROAD CO.

RAILROAD.—*Speed of Train.—Ordinance.—Negligence Per Se.*—Running an engine with a box car attached, through a city, at the rate of twenty miles an hour, in violation of an ordinance limiting the speed of trains to twelve miles an hour, is negligence *per se.*

SAME.—*Child Twelve Years of Age.—Sui Juris.—Personal Injury.—Railroad and Highway Crossing.*—A girl twelve years of age, of average intelligence, accustomed to cross a railroad track, is chargeable with knowledge that such railroad track is a place of danger, and that care must be used to avoid being struck.

SAME.—*Personal Injury.—Collision at Intersection of Highway.—Negligence.—Contributory Negligence.*—The negligence of a railroad company, in violating a city ordinance limiting the rate of speed of railroad trains, does not relieve a pedestrian on the street from exercising due care in crossing the track.

SAME.—*Personal Injury.—Railroad and Highway Crossing.—Child Twelve Years Old.—Contributory Negligence.*—A girl twelve years old, of ordinary size and intelligence, who attempts to walk across a railroad track in front of an approaching train which she could have seen if she had looked when five feet from the track, while the bell was ringing and after the whistle had sounded, is guilty of such contributory negligence as will prevent a recovery.

SPECIAL VERDICT.—*Freedom From Contributory Negligence.—Personal Injury.—Railroad.*—A finding that plaintiff, twelve years of age, was a child of immature years, and was exercising caution and prudence to the best of her judgment, and was without fault or negligence in attempting to cross defendant's railroad track, does not require a judgment in her favor where it clearly appears from other findings that she was guilty of contributory negligence.

From the Huntington Circuit Court.

*J. C. Branyan, J. S. Branyan* and *J. F. France,* for appellant.

*Stuart Bros. & Hammond* and *B. F. Ibach,* for appellee.

Ross, J.—The appellant, Mary J. Shirk, a minor, by her next friend, William H. Shirk, brought this action to recover damages for personal injuries received, the result of being struck by one of appellee's trains, at a point in the city of Huntington where a street of said city crosses appellee's railroad track.

The question presented on this appeal is this:    Do the facts found entitle appellant to a judgment?

The substance of the facts found by the jury in their special verdict may be summarized as follows:

That Condit street, in the city of Huntington, where the accident occurred, runs nearly north and south. Appellee has three railroad tracks, running east and west, crossing Condit street, the center being the main track and the other two sidetracks.    The south sidetrack was seven· feet, and the north sidetrack eight feet and three inches from the main track.    These tracks are the same distance apart for several hundred feet east, and for a quarter of a mile west of Condit street.    Over these distances they are substantially on a level grade.    There are no buildings, trees or other obstructions, when there are no trains on the sidetracks, that interfere with the view of trains approaching Condit street, either from the west or the east, for several hundred feet from Condit street.    The Chicago and Erie Railroad also has two sidetracks, eight feet apart, crossing Condit street, and running east and west, parallel with appellee's tracks. The south track of· said sidetracks is forty-three feet

north of appellee's north sidetrack.    The grade of Condit street at the crossing, and for some distance north, is on a level with the railroad tracks, but south of the tracks it is about eighteen inches below the grade of the railroad tracks.

On March 1, 1893, a freight train of appellee, consisting of thirty-eight cars and an engine, five of the cars being box cars, going to the west, ran in on its south track and stopped *west* of Condit street.    The engine and the five box cars were detached from the front of the train, and were run upon appellee's center, or main, track.    The remainder of the train was left standing on the south sidetrack west of Condit street.    On account of the cars left standing on appellee's south sidetrack, a person approaching on Condit street from the south, "could not see trains approaching from the west on the main track for 1,000 feet."

While the train was standing on appellee's south sidetrack, west of Condit street, the appellant, returning home from school and going north on the west side of Condit street, passed over the south sidetrack, at the rear end of said train, and while attempting to cross the main track, just as she stepped on the south rail thereof, she was struck by an engine and box car, approaching rapidly from the west, and thrown in the air a distance of about twenty feet.    She was lifted up and carried in an unconscious condition to her home.    On account of the cars standing on the south track, she could not see a train approaching on the main track from the west until she was within five feet of the main track; that just before stepping over the *south rail of the south sidetrack,* "she stopped to look and listen, and did look and listen at said time and place, and saw and heard no train approaching;" that the engine and box car were *approaching* rapidly from the west; that they

Shirk, by Next Friend, *v.* Wabash Railroad Company.

"were being so run towards said street crossing at a great, unusual and unlawful rate of speed, to-wit: at twenty miles an hour; and that in approaching said Condit street the bell on said engine was rung and the whistle sounded;" that "the engineer and fireman were at their proper places on said engine, and two brakemen were on top of said box car, one of them was standing on the east end of said box car, facing east, said brakeman looking to the east on said . box car being the only one on said engine or box car who saw the plaintiff before she was struck, and plaintiff could not be seen by any of the men on said car or engine, after she came in view in crossing said south track, in time to stop or check the speed of said engine or box car, so as to avoid said accident;" that at the school which appellant was attending, there were 300 pupils, from six to fourteen years of age, and that a large number of them crossed the railroad tracks at Condit street in going to and returning from school; that the street was a public crossing, extensively used by the public; and that the appellee did a large amount of switching and running of trains on its tracks at that place, and had placed no flagman or person at said crossing, and took no precaution to warn said school children and others of danger that might ensue from the running of trains over said crossing; that "at the time of the injury to this plaintiff, there was in force in the city of Huntington a city ordinance forbidding cars to run on said railroad in said city limits at a greater speed than twelve miles per hour ; that said ordinance had been in force for a long time prior to said injury, to-wit, fourteen years."

It is also found that appellant is a minor under the age of thirteen years; that at the time of the accident

"she was a child twelve years of age and inexperienced in the methods of railroading;" that at the time of the accident she "was a girl of ordinary size and intelligence for one of her age, and had been trusted by her parents to go to and from school and other places in said city by herself;" that "she had been in the habit of crossing said railroad four times a day, each day during the school terms, for eighteen months;" that the appellant, "in approaching said crossing at the time and place she received the injury, was a child of immature years, and was exercising the caution and prudence to the best of her judgment, and was without fault or negligence."

It is also found that in the accident, appellant "received a severe bruise and sprain in one of her ankles, several bruises on her back and shoulder, and two or three scalp wounds. She was rendered unconscious for some four or five hours, and vomiting blood for two or three days, and she was confined to her bed fourteen days. No bones were broken or dislocated. After about fourteen days she was able to be up. During said fourteen days she suffered considerable pain, and for some months afterwards suffered pain at times in consequence of said injuries. Said injuries were not necessarily permanent, and said plaintiff has not fully recovered therefrom. In consequence of said injuries occasioned by said accident said plaintiff has been damaged in the sum of $1,500."

Under section 3106, R. S. 1881 (section 3541, R. S. 1894), incorporated cities are specially empowered to regulate by ordinance the speed of railroad trains while running through the city. Hence any violation of such an ordinance is negligence.

If the appellee was running its engine, with a box car attached, at the rate of twenty miles an hour, in

violation of the ordinance limiting the speed of trains to twelve miles an hour, that was negligence on its part, and if such negligence caused the injury to appellant, and she did not contribute thereto, it must respond in damages.

The appellant, a child twelve years of age, of average intelligence for one of that age, so far as the facts show, must have known that it was dangerous to cross a railroad track in front of a moving train. And while the law presumes that a child of that age is not capable of exercising the same degree of care for her own safety which one of more mature years is susceptible of using, nevertheless it must be assumed that one of that age is capable of appreciating that there is danger and that care must be used to avoid being struck. That one of appellant's age is more likely to misjudge distance or miscalculate the rate of speed of a train than an adult, is evident; at the same time, a child of that age is willing to take greater risks, and, on account of its agility, is less liable to be injured.

Counsel for appellant say that they are unable to conceive by what mental reasoning the trial court concluded that the facts found by the jury were insufficient to warrant a judgment for the appellant. The reason given by the court, for its holding, they say, was that *"he could not tell what was the proximate cause of her injuries."* Then they proceed to say that the proximate cause is plain to be seen from the facts found, that "the meeting on that railroad track was, and could be no other than the result of the speed with which the girl approached the track, and the speed with which the broken train approached the crossing."

The law recognizes the right not only of the railroad companies to operate their trains, but also the right of the public to use the highways, and where one is inter-

sected by the other, both the railroad company and the public have a right of user.    The railroad company has no right to cut off or to interfere with the rights of the public, neither has the public a right to interfere with the operation of the railroad.    But common experience teaches us that an engine and train of cars propelled by steam, when under headway is not so easily controlled that it can be stopped or started either instantaneously or even within a short distance, while travelers on a highway in a wagon or on foot can stop at will, hence the former has a precedence over the latter, when both would reach the intersecting point at the same time.    It is for this reason that the traveler must stop and permit the train to pass.    This being the right of the former, one who attempts to cross in front of a moving train, and is injured, is deemed guilty of negligence.

The jury in their verdict found that the appellee's train as it approached the crossing was violating an ordinance of the city, hence we must hold that in violating such ordinance appellee was guilty of negligence; but conceding that appellee was negligent and that such negligence was one of the causes which brought about appellant's injury, that fact did not relieve appellant from the duty of exercising due care.

"The failure of the railroad company to do what the statute directs does not excuse one who approaches a railroad crossing from exercising the care and taking the precaution which the law enjoined upon him." *Cincinnati, etc., R. W. Co.* v. *Grames*, 8 Ind. App. 112, and cases cited.

Those who attempt to cross a railroad track are bound to know that it is a place of danger, and while they may not know that a train is approaching, they must exercise the faculties with which nature has endowed them, and must both look and listen, and be assured

that no train is approaching, before going upon the track.

"A railroad track is a perpetual menace of danger, and the traveler is not excused if his eyes and ears are not kept open up to such distance of it that he may stop if he can see or hear its approach." *Freeman* v. *Duluth, etc., R. W. Co.,* 74 Mich. 86 (3 L. R. A. 594).

In the case of *Smith* v. *Wabash R. R. Co.,* 141 Ind. 92, Monks, J., in speaking of the duty of one about to go upon a railroad track at a highway crossing, says: "He must assume that there is danger, and act with ordinary care and prudence upon that assumption. The law defines precisely what the term ordinary care, under the circumstances, shall mean in these cases. The question of care at railway crossings as affecting the traveler, is no longer as a rule, a question for the jury. The *quantum* of care in a large class of cases is exactly prescribed as a matter of law. In attempting to cross, the traveler must listen for signals, notice signs put up as warnings and look attentively both ways for approaching trains, if the surroundings are such as to admit of that precaution. If a traveler by looking could have seen an approaching train in time to avoid injury, it will be presumed in case he is injured by collision, either that he did not look, or, if he did look, that he did not heed what he saw."

A pedestrian can stop almost instantly, hence the fact that he was not able to see or hear an approaching train until very near the track, does not relieve him from the duty of looking and listening at a time and place, when by so doing he could see the approaching train and avoid injury.

In the case of *Beisiegel* v. *New York Cent. R. R. Co.,* 40 N. Y. 9, the court says: "The plaintiff (appellant) was crossing the track on foot; and it would seem that

the exercise of proper care on his part to protect himself would have enabled him to keep out of the way of the engine."

"When it is said that a person approaching a railroad crossing must look and listen attentively for approaching trains, it is not to be understood that he may look from a given point, and then close his eyes; but it is to be understood that he must exercise such care as a reasonably prudent person, in the presence of such a danger, would exercise to avoid injury." *Mann* v. *Belt R. R. and Stock Yard Co.*, 128 Ind. 138. And one is not prudent who will look and listen at a place where he knows he cannot see or hear a train approaching and then proceeds to cross without any further effort to discover whether a train is approaching. He must exercise his faculties at a time and place, if there is such, when they will avail him. And he should always proceed upon the assumption that a train is liable to come at any moment. *Cincinnati, etc., R. R. Co.* v. *Butler*, 103 Ind. 31. "He must assume that there is danger and act with ordinary prudence and circumspection upon that presumption." *Cincinnati, etc., R. W. Co.* v. *Grames*, 136 Ind. 39. And when the view is obstructed, the more cogent the reason that he should be on the alert constantly, so that if danger should suddenly confront him he may be able to avoid it. He has no right to proceed without any further precaution on his part, relying simply upon the assumption that the railroad company will do its duty and not be negligent in its performance thereof. The law is well settled in this State, that when a traveler on a highway comes in collision with a train at a crossing the presumption arises that it was the result of his own negligence. *Cincinnati, etc., R. R. Co.* v. *Butler, supra*; *Indiana, etc., R. W. Co.* v. *Greene, Admx.*,

106 Ind. 279; *Belt R. R. and Stock Yard Co.* v. *Mann,* 107 Ind. 89; *Indiana, etc., R. W. Co.* v. *Hammock,* 113 Ind. 1; *Cones, Admr.,* v. *Cincinnati, etc., R. W. Co.,* 114 Ind. 328; *Chicago, etc., R. W. Co.* v. *Hedges, Admx.,* 118 Ind.. 5.

In *Smith* v. *Wabash R. R. Co., supra,* the court says: "The rule in this State is that, when a person crossing a railroad track is injured by a collision with a train, the fault is *prima facie* his, and he must affirmatively show that his fault or negligence did not contribute to the injury, before he is entitled to recover for such injury."

In the case of *Young* v. *New York Cent. R. R. Co.,* 107 N. Y. 500, where the facts were very similar to the facts in the case in hand, the court says: "He was in no danger from the train on the south track for that was stationary. If that to some extent obstructed his view upon the north track, there was so much greater reason for him to take an observation the moment he had crossed the south track, so as to see whether he could cross the north track with safety, and for not doing so he is chargeable with contributory negligence, which bars a recovery."

In the case of *Greenwood* v. *Philadelphia, etc., R. R. Co.,* 124 Pa. St. 572 (3 L. R. A. 44), the court, in speaking of the rule requiring a traveler on a highway to look and listen for approaching trains before attempting to cross, even though the railroad company was negligent in the performance of its duties, says: "The rule itself is so valuable; is sustained by such abundant authority; and moreover is founded upon such excellent common-sense reasons, that we will neither depart from it, nor allow it to be undermined by exceptions. It is a clear and certain rule of duty, and a

departure from it is more than evidence of negligence; it is negligence *per se.*"

The rule thus announced is clearly applied in the case of *Cadwallader* v. *Louisville, etc., R. W. Co.*, 128 Ind. 518.

The jury found in their verdict that the appellant, before she stepped upon the south sidetrack, looked and listened and did not hear or see any train approaching; that she could not see a train approaching from the place where she looked, because of the cars standing on the sidetrack, which obstructed her view.  After she had passed beyond the obstruction, and while still five feet from the main track upon which the train which struck her was approaching, her view was unobstructed.  It is also found that those in charge of the engine blew the whistle and rang the bell while approaching the crossing. Why the appellant could not hear the whistle when it was blown, or the bell ringing, is not shown.  Neither does it appear why she did not look after she had passed the obstructions and when she was still five feet from the main track, and where her view was unobstructed. True, the jury find that she was exercising due care and caution, and although twelve years of age, of ordinary size and intelligence, and had been crossing the railroad where she was injured four times each school day for eighteen months; that she was not experienced in the methods of railroading, and "in approaching said crossing at the time and place she received the injury * * * was a child of immature years and was exercising the caution and prudence to the best of her judgment, and was without fault or negligence."

These latter findings, counsel for appellant insist, embrace all that it was necessary for the jury to find relative to the care exercised by appellant to avoid being injured.

It has often been decided by the supreme court of this State that findings of a jury that the defendant was guilty of negligence and the plaintiff free from contributory negligence, or that the defendant could have discovered defects in the machinery upon a proper examination, and that the plaintiff could not discover such defects, that the defendant did not exercise ordinary care under the circumstances, or that the plaintiff did exercise such care as an ordinarily prudent person would have exercised under like circumstances, and many similar findings, are findings of mere conclusions, and must be disregarded in considering the sufficiency of the facts found to make a case in favor of the plaintiff.   *Toledo & Wabash R. W. Co.* v. *Goddard,* 25 Ind. 185; *Pittsburgh, etc., R. W. Co.* v. *Spencer,* 98 Ind. 186; *Indianapolis, etc., R. W. Co.* v. *Bush,* 101 Ind. 582; *Cincinnati, etc., R. W. Co.* v. *Gaines,* 104 Ind. 526; *Conner* v. *Citizens' Street R. W. Co.* 105 Ind. 62; *Pittsburgh, etc., R. W. Co.* v. *Adams,* 105 Ind. 151; *Louisville, etc., R. W. Co.* v. *Worley,* 107 Ind. 320; *Chicago & Eastern Ill. R. W. Co.* v. *Ostrander,* 116 Ind. 259; *Cincinnati, etc., R. W. Co.* v. *Howard,* 124 Ind. 280 (8 L. R. A. 593); *Korrady, Admx.,* v. *Lake Shore, etc., R. W. Co.,* 131 Ind. 261; *Cincinnati, etc., R. W. Co.* v. *Grames, supra; Louisville, etc., R. W. Co.* v. *Berkey, Admr.,* 136 Ind. 181.

In the case of the *Cincinnati, etc., R. W. Co.* v. *Grames, supra,* the court held that although the jury found all the facts bearing upon the question of the plaintiff's care at the time and just preceding his injury, that if those facts were such that different minds might differ as to the conclusion inferable therefrom, hence it was the duty of the jury to draw the inference

as to whether or not the plaintiff exercised "ordinary care under the particular circumstances."

This court, however, upon identically the same facts, held that the court alone could draw the inference. *Cincinnati, etc., R. W. Co.* v. *Grames,* 8 Ind. App. 112.

The doctrine that the jury are to draw the conclusion inferable from the facts found, is specially repudiated in *Geddis* v. *Blackmore,* 132 Ind. 551 (555).

In *Walkup* v. *May,* 9 Ind. App. 409, this court, by Gavin, J., says: "It is, however, in such cases, essential that the jury should set out in their verdict both the primary and the final inferential facts, in order that the court may determine whether or not different conclusions may reasonably be drawn from them."

When appellant was five feet from the main track, she was far enough away to be safe from all danger from a train on that track, and had she looked and seen the train, which she must had she looked, and then stopped, she would not have been injured. The fact that she stepped on the track immediately in front of a moving train, when she could have seen it had she looked, or heard it had she listened, raises the presumption that she neither looked nor listened, or that looking saw, and listening heard, the approaching train, but deliberately took the risk of attempting to cross, notwithstanding the approach of the train. *Chicago, etc., R. W. Co.* v. *Hedges, Admx., supra.*

Counsel for appellant seem to think, and in their brief seek to impress upon the court, that this is an action between a little girl and a big railroad corporation, and for that reason it is only necessary to show, in order to warrant a recovery, that the latter was negligent. We recognize the fact that one of the parties is an individual and the other a corporation, but

Shirk, by Next Friend, *v.* Wabash Railroad Company.

what effect that fact has upon the law we are unable to see, unless it is intended by such argument to influence the court to stultify itself by disregarding the rules of law which control in cases of this kind, and render a decision in favor of appellant simply out of sympathy. Our reports already contain too many decisions wherein the human heart has controlled the action of the court, when the rules of law which should have been applied are lost sight of, and thus justice subverted.    Errors in judgment are excusable because natural and honest, but a willful diversion of the law is criminal.

While it may seem harsh to apply the law strictly, and especially as in the case where the injured party is a child, yet the law recognizes no class, sect, or person in its application.    It is made to mete out justice to all, and while in some instances it may seem a hardship to one party, in other cases it may appear an unjust burden to the other party.

However much our sympathies may be with the injured party in this case, we must apply the law as the appellee is entitled to have it applied.

We think appellant's insistence that because the jury found that she was but twelve years of age, and "was a child of immature years," the court must assume that she was *non sui juris*, untenable.    *Citizens' St. R. W. Co.* v. *Stoddard*, 10 Ind. App. 278.

We find no reversible error in the record, hence the judgment of the court below is affirmed.

GAVIN, C. J., concurs in the result, but not in all the reasoning.

Filed January 10, 1896.

## CONCURRING OPINION.

DAVIS, J.—Assuming that the appellee was guilty of actionable negligence which was the proximate cause of

the injuries sustained by the appellant, the question for our consideration is whether the special verdict shows that the appellant was free from fault.

The finding discloses that the appellant was twelve years of age and of ordinary size and intelligence, and had been in the habit of crossing the railroad about four times each day, during the school term for eighteen months; that on account of a freight train standing on the switch, extending from the point where she was crossing to the west, she could not see the train approaching from the west until she was within five feet of the main track; that the distance between the north rail of the switch and the south rail of the main track was seven feet and nine inches; that just as she attempted to cross and immediately before stepping over the south rail of the switch on which the freight train was standing, she stopped to look and listen and heard no train approaching; that at the point where she looked she could not see a train approaching from the west on the main track for one thousand feet, by reason of the freight train standing on the switch obstructing the view.

It is apparent that at the point where she looked no train on the main track within one thousand feet of the crossing could be seen. It is equally clear that if she had looked toward the west after crossing the switch track she would have seen the approaching engine on the main track in time to have avoided the injury.

The general rule is that one about to go upon a railroad track at a street crossing must assume that there is danger, and it is his duty to look both ways for approaching trains, if the surroundings are such as to admit of that precaution. *Louisville, etc., R. W. Co.* v. *Stephens*, 13 Ind. App. 145; *Louisville, etc., R. R. Co.* v. *Cronbach*, 12 Ind. App. 666;

*Grand Rapids, etc., R. R. Co.* v. *Cox,* 8 Ind. App. 29.

The law is settled that a child is held only to the exercise of such degree of care and discretion as is reasonably expected from children of his age. *Terre Haute Street R. W. Co.* v. *Tappenbeck,* 9 Ind. App. 422; *Citizens' Street R. R. Co.* v. *Stoddard,* 10 Ind. App. 278; *Louisville, etc., R. W. Co.* v. *Sears,* 11 Ind. App. 654; *Cleveland, etc., R. W. Co.* v. *Adair,* 12 Ind. App. 569.

The jury find in this case that the appellant was twelve years of age and that she was of ordinary size and intelligence, and that she had been in the habit of crossing the railroad at this point four times each day during the school term, for eighteen months. It is apparent that she was fully conversant with the surroundings. There is no fact in the finding indicating that she was lacking in capacity or that she was inexperienced. There is no finding as to what care or caution, if any, she exercised before attempting to step upon the main track after she reached a point where she could have seen or heard the approaching train if she had looked or listened in that direction. There is no finding that she was misled or thrown off her guard by the conduct of the appellee. *Grand Rapids, etc., R. R. Co.* v. *Cox, supra; Chicago, etc., R. R. Co.* v. *Hedges, Admx.,* 105 Ind. 398; *Cleveland, etc., R. W. Co.* v. *Keely,* 138 Ind. 600; *Ohio, etc., R. W. Co.* v. *Hill, Admx.,* 7 Ind. App. 255; *Pittsburgh, etc., R. W. Co.* v. *Burton, Admx.,* 139 Ind. 357.

In *Cleveland, etc., R. W. Co.* v. *Harrington,* 131 Ind. 426, relied on by the appellant, it appears that the traveler did look in the direction of the approaching train first when she was within eighty or ninety feet of the track and when she could see up the track for a dis-

tance of eight hundred feet, and again when she was within thirty-seven feet of the track and where she could see up the track for a distance of four hundred feet. In this case when the appellant looked, she could not see the main track any distance in the direction from which the train was approaching, and after she crossed the switch and reached a point where she could have seen the approaching train she did not look.

It is true there are many cases in which the question of contributory negligence may be determined by the jury. *Pittsburgh, etc., R. W. Co.* v. *Klitch,* 11 Ind. App. 290; *Marion Street R. R. Co.* v. *Carr,* 10 Ind. App. 200; *Louisville, etc., R. W. Co.* v. *Costello,* 9 Ind. App. 462.

"It is, however, in such cases, essential that the jury should set out in their verdict both the primary and the final inferential facts in order that the court may determine whether or not different conclusions may reasonably be drawn from the primary facts." *Walkup* v. *May,* 9 Ind. App. 409.

The primary facts found in this case are not, in my opinion, sufficient to warrant the final inference or conclusion that the appellant was in the exercise of due care at the time she received the injuries. *Louisville, etc., R. W. Co.* v. *Costello, supra; City of Bloomington* v. *Rogers,* 13 Ind. App. 121; *City of Bluffton* v. *McAfee,* 12 Ind. App. 490.

Therefore I concur in the affirmance of the judgment of the trial court.

Filed January 10, 1896.